PHILIPPE MARSOUDET, Syndic of the creditors of Pierre Henry Colsson *v.* A. J. V. JACOBS.

Objections on the ground of informality, illegality, or falsehood to the protest of a bill or note, and to the certificate of the notary as to the manner in which notice was served or forwarded, go to the effect, and not to the admissibility of the evidence. Such objections cannot authorize its exclusion. The notice and certificate are *prima facie* evidence; if proved to be informal, false, or illegal, the court or jury will disregard them.

Where a defendant offers in evidence the original of a notarial protest, for the purpose of showing, that in the part which relates to the demand and notice, it contains erasures and interlineations, and that the copy introduced by the plaintiff was not conformable to the original as to these matters, he cannot move the court to reject,

Marsoudet, Syndic, v. Jacobs.

that part of the original which relates to the demand and notice. *Per Curiam.* The legal consequences of the want of demand and notice, is a question entirely different from that of the reception of evidence by which they are expected to be supported or disproved.

The statements of a notary, in the body of a protest, as to the demand of payment, and his certificate as to the manner of serving or forwarding notice, may be contradicted by parol. His statements and certificate are legal, but not conclusive evidence of what they contain. Act 13 March, 1827, sect. 1. Evidence to contradict them is admissible under a general denial of the allegations in the petition.

The mere erasure of one or more words in an act of protest, and the interlineation of others, will not annul the instrument. Notaries may, at the time, correct omissions or errors in such an act, by erasing words incorrectly used, and by interlining others; but they cannot, after the act is executed, alter or amend it in any respect. To annul an act on account of such interlineations or erasures, it must be proved that they were made after the act was executed.

By the commercial law it is not indispensably necessary that the demand of payment of a promissory note, or inland bill of exchange, should be made, and the notice of non-payment given by a notary. Any person competent to testify as a witness, may do so; but the mode of proof is different in the two cases. Under the act of 13 March, 1827, sect. 1, the certificate of the notary is evidence of the demand and notice of protest; but when the demand is made, or notice given by a private individual, it must be strictly proved by the person making it, or by other competent testimony.

The acts of 14 February, 1821, and 13 March, 1827, authorizing notaries, and others acting as such, to demand payment of notes, bills of exchange, or orders for the payment of money, and to give notice of the protests thereof, and making their statements in the protest and certificates evidence of all that is contained in them, gives this authority to their official acts as sworn officers, and on the assumption that their acts and statements are under the sanction of their official oaths. They are expected to act themselves in making demands and giving notices. The duty cannot be delegated to others. They can only certify what they do or have done themselves, or what they know to be true of their own knowledge. The acts of 1821 and 1827 introduced no new rule as to the demand of payment and notice of protest of bills and notes, but only another mode of proving them. What will constitute legal demand and notice, depends on the general commercial law.

A party cannot prove by parol, a demand of payment of the drawer of a bill made by a private individual, and a notice of protest by the notary's certificate. The certificate can only be evidence of notice, when the notary makes the demand himself.

APPEAL from the City Court of New Orleans, *Collins*, J.

GARLAND, J. The defendant is sued as the endorser of a promissory note, drawn by one Bernard Hart, given, as it is alleged and proved, to secure part of the price of a lot of ground in the city of New Orleans, sold by the plaintiff to Hart, on which the former retained a mortgage as additional security. It is al-

leged that payment of the note was demanded, and notice of non-payment given to the defendant.  The petition concludes with a prayer for judgment against the defendant for $625, with interest and costs, with a mortgage and vendor's privilege on the house and lot described.  The answer admits the endorsement of the note, but denies all the other allegations, and all liability on account of said endorsement.

The plaintiff offered in evidence a copy of the act of sale from himself to Hart, the drawer of the note, to establish his claim to a mortgage, we suppose ; also the note, and a protest in the ordinary form.  The formal and usual words used in a protest are printed, and a blank was left for the date which was filled with the words " *seventh day of August.*"  The word *seventh* was erased, and an asterisk placed at the end of it, referring to the word *fifth* written at the foot of the instrument, over the notary's and witnesses' names, to which is added : " This ref$^{ce}$, app$^{ed}$ ; one word erased, null."  In the body of the protest the notary states, that he is duly commissioned and sworn, and that he " proceeded to the late domicil of Mr. Bernard Hart, and there presenting said note to Mrs. Widow Hart, I demanded payment thereof, and was by her answered, that she had no funds to pay the said note, but that Mr. Greiner would settle the matter.  I then proceeded to the office of Mr. Greiner, and there presenting him the same, I demanded payment thereof, and was by him answered, that said note was to be protested."  The certificate of notice is in the usual form.  The object of offering the original protest in evidence, it is stated, was to show the erasure and interlineations in it.  The defendant then had the notary who made the protest, sworn as a witness, and asked him, whether he had ever demanded payment of the note sued on, as stated in his protest.  He refused to answer the question.  Armand Durel, who signs the protest as a witness, and is understood to be a clerk of the notary, states, that it was he who demanded payment of the note of Mrs. Hart, who referred him to Greiner.  He then called on that gentleman with it, and demanded payment of him, who, after some conversation not necessary to be recapitulated, told him that the note might be protested.  He says, that he knows that the notary did not in person make any demand of said note.  Demoruelle, the other witness to

the protest, and a clerk of the notary, says, that he was in his office on the 5th of August, 1843, and that Durel demanded payment of the note. He knows that Boudousquie did not demand payment of it. Greiner says, that on the 5th of August, 1843, Armand Durel, one of the witnesses, demanded of him payment of the note. That the notary never did demand it of him at any time.

The inferior Judge in his judgment says, that it being shown that payment of the note was demanded at maturity, and notice of its protest given to the defendant, he, therefore, gives judgment for the plaintiff, from which judgment the defendant has appealed.

Our attention is first called to several bills of exceptions taken by both parties. The plaintiff first offered as evidence, a document purporting to be a copy of the protest of the note sued on, to establish a demand of payment of the drawer, and notice to the defendant. The defendant, by her counsel, objected to its reception, on the ground that it contained erasures and interlineations; that no day was mentioned therein, when demand of payment was made of the drawer; that it was illegal, informal, and not made according to law. The Judge said, that the interlineations appeared to be merely the usual memoranda made by the notary, of his corrections of the body of the act or copy, and that the erasures, being noted at the bottom over the signature of the notary, supplied and corrected the omission of the date, and that, therefore, he would admit the act as evidence. The defendant excepted. We do not think the Judge erred. The objections all go to the effect of the evidence, and not to its admissibility. The law makes the protests and certificates of notaries, at least *prima facie* evidence of demand and notice; if they are informal, illegal, or false, it is not a cause for excluding them from the court or jury, but a reason for declining to give them effect, when the illegality or incorrectness of the act is established by proper testimony.

The defendant then offered as evidence the original of the notarial protest, for the purpose of showing that it contained erasures, and interlineations, and that the copy was not conformable to said original, in relation to these matters. He also moved the court to disregard the copy, and all that part of the original which goes to establish a demand of payment, because of the erasures and inter-

lineations, and the informality and illegality of the act. The Judge admitted the document in evidence, for nearly or exactly the reasons before stated, and refused to disregard what was erased or interlined, because it was explained at the foot of the protest, before signature. In this decision, the Judge did not err. The defendant cannot complain, that the Judge admitted the document offered by her counsel, for the purpose mentioned; and she had no right to call upon the court to reject and disregard all that related to demand and notice. The sufficiency of those is the question to be decided, and if the Judge had said the protest was a nullity, there would have been an end of the controversy. The legal consequences of a want of demand and notice, is a question entirely different from the reception of the evidence, by which they are expected to be supported or defeated.

The defendant then offered parol proof to contradict the copy of the act offered by the plaintiff. To this the latter objected, as it would contradict the original act offered by the said defendant in evidence ; and further, because the law, having made the copy of protest and certificate of notice evidence of both demand and notice, the protest could not be contradicted by parol evidence ; more particularly, as the statements made in the body of the protest and certificate are not specially denied in the answer. The court overruled the objections, and the plaintiff excepted. We think the Judge did not err. The statements made by the notary in the body of his protest as to the demand, and the certificate of notice, may, in our opinion, be contradicted and shown to be untrue. The law makes his statement and certificate legal evidence of what is stated, but it is not conclusive and final. Like all other evidence, it may be contradicted and shown to be erroneous, upon proper allegations in the answer, which seem in this case to be sufficient to authorize the reception of the evidence.

On the merits of this case, the defendant relies upon two grounds to defeat the plaintiff's action.

1st. That the erasures and interlineations in the act of protest make it a nullity, and that the latter were made sometime subsequent to the date of the instrument.

2d. That the statement in the body of the protest, that the demand made of the drawer of the note, or, at his legal domicil, of

another person, *by the notary*, is not true ; and that no legal demand of payment was ever made of the maker previous to the protest.

Upon the first point, we are of opinion, that the mere erasure of one or more words in the act of protest used incorrectly, and the substitution of others which are correct, does not of itself make the instrument a nullity. Notaries are as liable to commit mistakes in drawing up protests, as they are in preparing other acts, and the same consequences result from them. They have a right to correct their omissions or errors, and may, at the time, erase a word improperly used, and insert the correct one, by interlining it ; but they have no right, after an act is made, to alter or amend it in any respect. In this case, it is not shown that the erasures and interlineations were made subsequent to the protest ; and they, therefore, do not annul it. The evidence makes it certain, that the using the word *seventh* was an error, and that the erasure of it and the insertion of the word *fifth*, made the instrument conform to the truth. The demand of payment made by Durel, is shown to have been on the fifth of August, 1843.

The second point is, in our opinion, fatal to the demand of the plaintiff. By the commercial law, the holder of a promissory note or inland bill of exchange, may send any one competent to testify as a witness, to make a demand of payment, and, in case of the neglect or refusal of the drawer to pay, the holder may himself notify the endorsers by a written notice, sent through the post office, or in any other legal mode. In such a case, it is always necessary to produce in court, on the trial, the testimony of the person who made the demand, and gave the notice, or deposited the letter in the post office, to prove the time, place, and manner of making the demand and giving the notice. In the case of *Harrison* v. *Bowen*, 16 La. 286, this court said : " It is not indispensably necessary that a demand of payment of a note should be made, and notice given by a notary public. Any other person may make such demand and give such notice, but the mode of proof is different. By our law, the certificate of a notary is evidence of demand and notice of protest ; but when such demand is made and notice given by a private individual, it must be strictly proved by the person making it, or by other competent testi

mony." In 6 La. 730, this court, also held, that the act of 1827 relating to the protest of notes by notaries public, " has not introduced any new rule as to the demand of the makers of promissory notes, or acceptors or drawees of bills of exchange. What will constitute a legal demand of payment, so as to bind endorsers, must depend on the commercial law, independently of the act of 1827. Chitty on Bills, 337, and notes."

The Legislature, for the purpose of introducing more certainty and uniformity, in the mode of making demands and giving notices of protest; for making the proof of them more convenient ; and for the purpose of making interest run on notes and bills from the date of protest, and for other purposes, passed various acts *authorizing* Notaries Public, Parish Judges, and in some cases, Justices of the Peace, to make demands, and give notices of the dishonor of notes and bills of exchange, and making their certificates and statements admissible as evidence in courts of justice, of what is stated in them. B. & C.'s Dig. 41, 42, 43. The law gives this authority, and reposes this confidence in the official acts of these persons, because they are sworn officers, and upon the assumption that all their acts and statements, will be made and given under the sanction of, and in reference to their oath of office, and, therefore, dispenses with the personal presence of the officer to testify to his acts. The act of 1827 says, that Notaries shall, in their protests, make mention of the demand made upon the drawer, &c., " and of the manner and circumstances of such demand," and also the manner of giving notice. A high confidence is reposed in the officer, and a power given to him, which if not legally and prudently exercised, may produce the most serious results. The law expects and requires Notaries Public to act themselves, in making demands and giving notices. It is a duty they cannot delegate to others. In the case of *Duralde* v. *Guidry*, &c., 5 Mart. N. S. 66, it is said, that " the act of the Legislature already referred to, has made no change in relation to the necessity of establishing these facts, which were always necessary to be shown, in order to bring notice home to the endorser. It has only introduced another manner of proving them No higher credit can be given to a certificate, than would have been given to the oath of the Notary, had he testified to the same facts in open court. Proof made in the

latter mode, that he sent an express, would not be evidence that this express reached the endorsers. We do not see how a Notary could swear or can testify, that a notice of protest was duly served, unless he did so himself, or put it in the post office. When he employs the agency of another, neither his oath nor his certificate of what that agent did, is the best evidence of which the case is susceptible. The statute, by requiring the officer to state the manner in which these notices are served or forwarded, negatives the idea that his certificate is conclusive. It conveys, on the contrary, a clear intimation that the court is to judge whether, in the manner used, the endorser could be considered as having knowledge of the fact. Any other construction would leave these expressions without meaning, or motive. Under this act of the Legislature, the endorser is affected by testimony which he has no power to cross-examine. The *ex parte* proof should be, therefore, clear, and in strict pursuance of the law under which it is taken. It is conferring power enough on Notaries, to enable them to bind their fellow citizens by certificates of what they do themselves. It would be monstrous to permit them to certify to the truth of facts, which they can only know from the relation of others." This reasoning, it appears to us, is conclusive.

In the case before us, the Notary in positive terms states in his protest and certificate, that he made the demand, and gave notice of protest. When called on to say on oath, whether these statements are true, he refuses to answer. In other words, he refuses to sustain, as a witness in court, what, as a sworn officer, he had stated in an official act to be true. This the law does not, and will not sanction. Notaries are only permitted to certify what they do themselves, and what they, of their own knowledge, know to be true. They cannot, by adopting the acts and sayings of others, make them evidence against others. The defendant has most clearly shown, that the Notary never made any demand of payment of the note as stated in the certificate ; and that that shown to have been made by his clerk, is insufficient.

The plaintiff contends, that although the certificate of the Notary may be insufficient, yet as it is proved by Durel that he made a demand of payment, he comes within the case in 16 La 286. So far as to the demand, this may be true, but the witness

does not prove any notice to the defendant, of a refusal to pay by the drawer, or the agent named. The certificate of the Notary is the only evidence of notice, and the insufficiency of that has been shown. The plaintiff cannot be permitted to prove by parol, a demand of payment of the drawer, and a notice of protest by the Notary's certificate. That certificate can only be evidence of notice when the Notary makes the demand. /

The judgment of the City Court is, therefore, annulled and reversed, and ours is for the defendant as in case of nonsuit; with the costs in both courts.[*]

*Marsoudet*, plaintiff, pro se.

*Greiner*, for the appellant.

---

[*] By an act of 14 March, 1844, subsequent to the date of this decision, it is declared : "That it shall be lawful for each and every Notary Public in the city of New Orleans, to appoint one or more deputies to assist him in the making of protests, and delivery of notices of protests of bills of exchange and promissory notes : *Provided*, that each Notary shall be personally responsible for the acts of each deputy employed by him ; and *provided*, that each deputy shall take an oath faithfully to perform his duties as such, before the Judge of the parish in which he may be appointed ; and *provided*, the certificate of notice of protest shall state by whom made or served."